UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                            )
UNITED STATES OF AMERICA    )
                            )
    v.                      )
                            ) CIVIL ACTION NO. 10-cr-10159-PBS
TODD LYONS,                 )
                            )
        Defendant.          )
                            )
_____)

**MEMORANDUM AND ORDER**

August 18, 2011

Saris, U.S.D.J.

Defendant Todd Lyons moves to suppress evidence derived from electronic surveillance on the ground that the Essex County District Attorney failed to properly approve the wiretap applications. For the reasons stated below, Defendant's motion to suppress is **DENIED** with respect to the initial application, and the Court defers ruling on the motion with respect to the amendment applications adding Todd Lyons or requesting wiretaps on phone numbers which resulted in interception of his communications.

**I. Background**

On October 12, 2005, Essex Country District Attorney Jonathan Blodgett signed a special designation letter for Essex

1

County First Assistant District Attorney John T. Dawley and Assistant District Attorney Michael Callahan ("ADAs") to apply for a state wiretap warrant. The special designation letter stated in pertinent part:

> I hereby specially designate you to make application pursuant to Massachusetts General Laws, Chapter 272, Section 99, for an interception warrant, and to make applications for any amendments, renewals and extensions thereof, to intercept certain wire communications of William Demarkis and others occurring over telephone numbered 781-264-4218.
>
> I further authorize and designate you to personally make presentment to a justice of competent jurisdiction of the application for the interception warrant, <u>as well as all extension and renewal applications, amendment applications</u>, status reports, and return documents emanating from the above-mentioned documents[.]

Doc. 81 at 2 (emphasis added). District Attorney Blodgett also signed a letter to Justice Welch of the Massachusetts state Superior Court informing him of the special designation and stating, with regard to extension, renewal, and amendment applications, that all such documents "shall be reviewed by me or my designee before being presented to you." Id. at 1.

On that same day, the ADAs filed a state wiretap application to intercept telephone communications occurring over 781-264-4218, a phone line belonging to William Demarkis. The application contained the following recitation:

> We are the Assistant District Attorneys within the Meaning of General Laws Chapter 272, Section § 99(F)(1) in that, by means of a letter dated October 12, 2005,

2

> Jonathan Blodgett, the duly elected District Attorney for the Eastern District of the Commonwealth of Massachusetts, has specially designated us to make applications ex parte to a judge of competent jurisdiction for an order and warrant to intercept wire communications pursuant to the provisions of Massachusetts General laws, Chapter 272, Section 99.
>
> [A]s set forth in the aforementioned letter, the District Attorney has authorized these applicants to personally make presentment to this Court of this application, as well as all extension and renewal applications, all status reports, and all return documents emanating from the requested wiretap warrant, all of which shall have been reviewed by District Attorney Blodgett or his designee before being presented by these applicants.
>
> [T]he District Attorney has determined that as a matter of uniform law enforcement policy within Essex County, the authorization of this wiretap is proper, is required, and is consistent with its overall policy of eliminating the operation of conspiracies to supply services relating to registering bets in violation of [G.L. ch. 271, § 17].

Massachusetts Superior Court Justice Richard Welch approved the application.

From October to December, 2005, the ADAs requested several amendments to the original application requesting authorization to intercept communications on six additional telephone lines, including, on December 8, 2005, the Defendant's telephone line at 781-526-0591. Justice Welch granted the requested amendments. The Essex County district attorney did not draft additional special designation letters authorizing the ADAs to request such amendments. Defendant's conversations were thereafter intercepted.

Defendant Lyons now moves to suppress all evidence derived from the wiretap, arguing that the application was not properly authorized by the District Attorney as required by 18 U.S.C. §§ 2510-2520 and Mass. Gen. Laws. ch. 272, § 99F(1).

## II. Discussion

As an initial matter, Lyons only has standing to challenge interceptions directed against him or to which he was a party. See 18 U.S.C. §§ 2518(10)(a) (stating that "aggrieved persons" may move to suppress contents of communications intercepted by wiretap), 2510(11) ("'aggrieved person' means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed").

Federal law requires that judicial authorizations for wiretaps be subject to certain procedural safeguards. See Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III"). In a federal prosecution, federal law determines the admissibility of state wiretap evidence. United States v. Sutherland, 929 F.2d 765, 769 (1st Cir. 1991). In some cases, a combination of federal and state law may apply, United States v. Marion, 535 F.2d 697, 702 (2d Cir. 1976), but that would only be the case here to the extent that the state law governing authorization procedures for wiretaps is more protective of privacy. United States v. Charles, 213 F.3d 10, 20-21 (1st Cir. 2000).

Under Title III, only the "principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State" may apply to state court judges for authorization to intercept wire communications. 18 U.S.C. § 2516(2). In Massachusetts, the "principal prosecuting attorney" is the "attorney general, any assistant attorney general specially designated by the attorney general, any district attorney, or any assistant district attorney specially designated by the district attorney." Mass. Gen. Laws. ch. 272, § 99F(1). The United States Supreme Court has stated that "pre-application approval was intended to play a central role in the statutory scheme and that suppression must follow when it has been shown that this statutory requirement has been ignored." United States v. Giordano, 416 U.S. 505, 528 (1974).

Massachusetts' statutory requirements were "fortified by the carapace of deliberate judicial interpretation and supplementary requirements" by the Massachusetts Supreme Judicial Court ("SJC") in 1975. United States v. Smith, 726 F.2d 852, 857 (1st Cir. 1984) (citing Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (Mass. 1975)). The SJC imposed the following requirements:

> 1. It interpreted "specially designated" to mean "that an assistant district attorney . . . must bring the matter for examination before his senior officer, the district attorney"; [Vitello, 367 Mass.] at 256, 327 N.E.2d 819.

5

> 2. "[T]he district attorney is to determine whether a particular proposed use of electronic surveillance would be consistent with the overall policy". Id. This determination requires "not a cursory but full examination by the district attorney of the application". Id. at 256 n.16, 327 N.E.2d 819.
>
> 3. The district attorney must "authorize each such application in writing", id. at 232, 256, 327 N.E.2d 819; "the special designation of [an] . . . assistant district attorney must be on a case by case basis with written authorization", id. at 257 n.17, 327 N.E.2d 819. This satisfies the federal requirements even if they are read to require that the district attorney himself must apply for the warrant, but the court reads the federal requirements as being satisfied if the chief prosecuting officer has centralized authorizing power. Id.

Smith, 726 F.2d at 857-58. The SJC also noted that "the better procedure is that the . . . district attorney should cosign the application for the warrant with the designated assistant[.]" Vitello, 237 N.E.2d at 826. That said, the district attorney is not *required* to personally cosign the wiretap application. Id.; see also Commonwealth v. D'Amour, 428 Mass. 725, 704 N.E.2d 1166, 1174-75 (Mass. 1999). Furthermore, a district attorney need not "personally apply or affirmatively demonstrate total familiarity with all aspects of a case[.]" Vitello, 327 N.E.2d at 839.

Vitello intended to ensure that "necessary centralization [for wiretap applications] is provided for as is the concomitant protection that the individual with final authority to regulate electronic surveillance be subject to public accountability." Vitello, 327 N.E.2d at 839. The SJC has clarified that these concerns are satisfied when evidence "suggest[s] that the

6

district attorney was familiar with the content of the application when she signed the authorization." D'Amour, 704 N.E.2d at 1175. This familiarity can be demonstrated by circumstantial evidence, as in D'Amour, where the court inferred the district attorney's familiarity with the application because the authorization described the alleged crime, the authorization and application were presented together, and the two documents shared the same date. Id.

Here, Essex County District Attorney Blodgett prepared two letters regarding the designation: one to the assistant district attorneys specially designating them, and one to Justice Welch informing him of the special designation. Another session of this Court has found a very similar special designation letter sufficient under §99F(1). See United States v. Gianelli, 585 F. Supp. 2d 150, 159 (D. Mass. 2008). In that case, D.A. Blodgett "state[d] that the applications will be reviewed by 'me or my designee before being presented to you'." Id. at 158. The court found his special designation sufficient, noting that

> the letter was dated near to the day of filing, the letter and application were bound together and the defendant offered no evidence that the application had not been properly authorized. See Commonwealth v. D'Amour, 428 Mass. 725, 734-35, 704 N.E.2d 1166 (1999). DA Blodgett's letter did not include as detailed information about the crimes as the letter did in D'Amour but it specifically named the three individuals being investigated. Although it is unfortunate that DA Blodgett has not adopted the SJC's suggestion of co-signing the application, as the First Circuit pointed out in Smith, such an oversight is not fatal to the

7

wiretap. 726 F.2d at 859.

Gianelli, 585 F. Supp. 2d at 159.

The Court finds the same logic persuasive here. The fact that the designation letter, the letter to Justice Welch, and the warrant application were all dated October 12 supports the reasonable inference that they were all presented together and that D.A. Blodgett was familiar with the contents of the application.

Lyons next argues that the amendments to the application adding new telephone lines should have required new special designation letters. The Gianelli court addressed this issue, as well. In that case, "[w]ith respect to 'amendments' (i.e., successive applications that seek to intercept communications occurring over telephones or between individuals not identified in an original designation letter), . . . the Essex County applications seeking amendment did not include new designation letters, referring instead to the October 30 designation letter." Gianelli, 585 F. Supp. 2d at 159. The court found the amendment applications adequate nonetheless: "Such an omission is not fatal, however, because actual authorization by the district attorney for amendment applications is not required." Id. (citing United States v. DeJesus, 752 F.2d 640, 643 (1st Cir. 1985)). The court criticized the district attorney for not signing the application and for not including more detailed

8

information about the crimes at issue, but denied the motion to suppress the evidence from the amended application, pointing out that the designation named the three individuals being investigated and that D.A. Blodgett had filed an affidavit about the authorization process.

Significantly, the "amendment" applications in DeJesus added new interceptees to an existing authorized tap. Here, the amendments added new phone lines to be tapped. In the DeJesus case, the lower court described the amendment application as follows:

> The final issue before this Court involves defendant Clarence Variste, the only defendant who was not named in an initial or renewal warrant application. Defendant Variste was added to the wiretap on a telephone in Randolph by amendment on January 4, 1983; this was the last substantive amendment to the last renewal on the Randolph telephone. Defendant Variste argues that the January 4, 1983 amendment was not specifically authorized by District Attorney Flanagan and, therefore, the seizure of the evidence used to convict him was unlawful.

United States v. Smith, 587 F. Supp. 653, 657 (D. Mass. 1984). The district court found that no specific authorization from the DA was required for amendments adding "newly identified persons" on an existing authorized wiretap. Id. The appellate court affirmed, noting:

> In contrast to the wiretap renewal applications, for which the district court found actual authorization, the court found that the wiretap amendment application which added appellant Variste's name as an interceptee to an existing (authorized) wiretap was not specifically authorized by the attorney general prior

9

> to submission to the Massachusetts courts for approval.
> The court below concluded, however, that because Mass.
> Gen. Laws. Ann. ch. 272, § 99 does not require actual
> authorization by the district attorney for amendment
> applications, the filing of the amendment was lawful.
> As to this point, we also affirm.

DeJesus, 752 F.2d at 643.

The Court is faced with the difficult question whether an amendment application adding a new telephone number to be intercepted- and not just a new interceptee to an existing wiretap- requires specific authorization under § 99 F(1). As the First Circuit said, the state statute does not require actual authorization by the D.A. for amendment applications that do not add new telephone numbers. See DeJesus, 752 F.2d at 643. It is unclear, under this case law, whether an amendment application to wiretap a new target and a new phone can properly refer back to the original special designation letter. The SJC has addressed a related question, namely whether amendment applications must meet the probable cause and particularity requirements of § 99 F(2), as follows:

> We note first that the statute is silent with regard to
> amending or modifying a wiretap warrant, and no cases
> squarely address the issue. The statute does, however,
> provide for renewing wiretap warrants under § 99 J.
> The concern of that provision is that the renewal
> application fully satisfy the same requirements that
> applications for warrants must satisfy under § 99 F.
> Hence, a renewal, like an application for a new
> warrant, must contain reliable information that
> describes with particularity probable cause and
> necessity for the proposed wiretap. Compare § 99 J
> with § 99 F. We hold, therefore, that a modification
> of or an amendment to a valid wiretap order that is

> still in effect is valid under § 99 if the request fully satisfies the provisions of § 99 F.

Commonwealth v. Westerman, 414 Mass. 688, 611 N.E.2d 215, 221-22 (1993). This reasoning is not dispositive of the case at hand, though, because the law is settled that renewal applications do not require specific authorization from the D.A. See D'Amour, 704 N.E.2d at 1175 ("[N]either the wiretap statute nor Vitello requires written authorization for renewals.").

There is little case law on point in the Title III context. The Sixth Circuit has stated that an amendment to an order seeking permission to change the parties installing the wiretap did not require special authorization. The court stated:

> Our conclusion that the Assistant Attorney General's authorization is unnecessary is consistent with the purpose underlying § 2516(1). The requirement that a specially designated senior Justice Department official authorize wiretap applications was designed to insure that *decisions to wiretap* were made by the named officials and did not reach into the lower echelons of command.

United States v. Lambert, 771 F.2d 83, 90 (6th Cir. 1985) (internal quotation marks and citation omitted). Arguably, the amendments adding the phone numbers of Lyons and other new targets involved "decisions to wiretap," and therefore may require authorization.

The case law provides that no re-authorization is required for renewals, D'Amour, 704 N.E.2d at 1175, or technical amendments, DeJesus, 752 F.2d at 643, and that "once the proper

11

official is found to have authorized a wiretap application, his authorization is not subject to further judicial review." United States v. O'Malley, 764 F.2d 38, 41 (1st Cir. 1985). That said, the weight of the case law, along with Vitello, the text of § 99, and the text of § 2516(2), suggests that a D.A.'s blanket letter of authorization for a given case is not sufficient to authorize the addition of a new telephone line and new interceptee by amendment application, absent evidence that the D.A. actually approved the amendment application. Here, District Attorney Blodgett only authorized interception of "William Demarkis and others occuring over telephone number 781-264-4218." He did not mention the specific crimes, other people, or other phone numbers.

The First Circuit in Smith remanded the case to the District Court for "a particularistic inquiry" into the extent of the D.A.'s actual involvement. 726 F.2d at 860. The First Circuit there admonished, "We emphasize here what should be obvious, that the failure of the Massachusetts District Attorney to follow the cosigning recommendation of the Supreme Judicial Court in Vitello has necessitated a detailed factual inquiry by the district court. We hope that in the future this will not be necessary." Id. This Court notes with disappointment that the District Attorney has not heeded this admonition, resulting in the need for further evidentiary findings.

**ORDER**

The Court denies the motion to suppress with respect to the initial application and all subsequent applications except those adding Todd Lyons or requesting wiretaps on phone numbers which resulted in interception of his communications.  D.A. Blodgett shall submit an affidavit regarding his authorization of the particular amendments at issue in this motion.  If necessary, the Court will hold an evidentiary hearing.  The Court reserves judgment on amendments implicating Todd Lyons pending consideration of this issue.

       /s/ Patti B. Saris
       PATTI B. SARIS
       United States District Judge