UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 10-10159-PBS |
| TODD LYONS, | ) ) ) | |
| Defendant. | ) ) | |

**AMENDED MEMORANDUM AND ORDER**[1]

August 25, 2011

Saris, U.S.D.J.

INTRODUCTION

Defendant, Todd Lyons, who has been charged with a number of offenses, including engaging in an illegal internet gambling operation in violation of 31 U.S.C. § 5363(3) and money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a), moves to suppress evidence acquired as a result of search and arrest warrants.  After hearing, the motion to suppress is **DENIED**.

**I. Factual Background**

The record contains evidence to support the following facts. On December 8, 2005, and December 21, 2005, a state court judge authorized a wiretap for Lyons' telephone based on an affidavit

---

[1] This Memorandum and Order supersedes the Memorandum and Order dated July 19, 2011 (Docket No. 98).

1

by Massachusetts State Trooper Russolillo. The affidavit stated that police investigations had revealed Lyons to be a conduit between Sports Off-Shore ("S.O.S."), an online sports betting company, and an alleged bookmaker, Richard Settipane Jr.

In subsequent applications for search warrants of Lyons' home, car, and person, Russolillo offered another affidavit, stating that additional police investigation, along with the electronic surveillance conducted under the 2005 wiretap warrant, revealed further contacts between Lyons and S.O.S. The state court judge signed the first pages of the 23 warrant applications, confirming that Russolillo had appeared before him, but did not sign the warrants themselves.

The police executed the search on January 4, 2006, pursuant to the unsigned warrants. When the police arrived at the house, Lyons was not at home, so the police broke a window to gain entry. Inside, they seized various pieces of evidence related to the sports betting organization. Lyons arrived during the search and was served with the warrants. Upon realizing the signature error, the state court judge re-executed the warrants the following day and noted that the failure to sign them had been an administrative oversight. Lyons was never served with the re-executed warrants.

**II. Discussion**

    **A. Validity of the Warrants**

Lyons' first argument is that the warrants allowing the searches of his home, car and person were unsigned, and therefore invalid.

The Commonwealth's motion for re-execution of the warrants stated that the failure to fully execute the warrants was through sheer inadvertence, because under Massachusetts law, "a failure to sign an otherwise valid warrant, in a situation where there is no question that the judge intends to issue the warrant, should be deemed a ministerial defect which does not invalidate the warrant." Commonwealth v. Pellegrini, 405 Mass. 86, 539 N.E.2d 514, 515 (1989). The state court judge allowed the motion, noting that

> [t]he failure to completely execute the search warrants was inadvertent and of no substantive consequence. The first page of the warrant was signed by the judge after the officer swore to the affidavit and signed the warrant. The judge inadvertently failed to sign the second page of the warrant form. This second page was signed 1/5/06.

Def. Ex. 10. Where "the judge intended to issue the warrant, and the judge signed the officer's affidavit, the failure to sign the warrant is no more than a clerical error." Pellegrini, 539 N.E.2d at 516 (internal quotation marks and citation omitted). Such error may be harmless even where the Commonwealth notices the omission prior to executing the search. See Pellegrini, 539 N.E.2d at 516, n.3.

Lyons argues that this court should permit discovery and allow an evidentiary hearing on what Trooper Russolillo presented

3

to the state court judge initially, whether the Commonwealth executed the search warrant knowing that it was unsigned, or how the trial judge was approached to remedy the error.[2]

Defendant has not explained why these issues are relevant to the validity of the warrants. The First Circuit follows "the general rule that 'the admissibility of evidence obtained during a joint federal-state investigation for use in a federal criminal trial is governed by federal law.'" United States v. Sutherland, 929 F.2d 765, 770 (1st Cir. 1991) (quoting United States v. Pratt, 913 F.2d 982, 987 (1st Cir. 1990)). "This is true even when the evidence is obtained pursuant to a state search warrant or in the course of a state investigation." United States v. Charles, 213 F.3d 10, 19 (1st Cir. 2000) (internal quotation marks and citation omitted); cf. United States v. Turner, 558 F.2d 46, 49 (2d Cir. 1977) ("[A] violation of the state telephonic search warrant procedures, even if such a violation would result in suppression in the California courts, . . . would not necessarily require suppression in federal court."). The validity of the warrant under state law is not dispositive. The question is whether the warrant is valid under the Fourth Amendment and federal law.

Signs point to the warrant being valid. "[T]he text of the

---

[2] The Government has agreed to produce records of the state warrants for in camera inspection. No further discovery is warranted beyond this.

Fourth Amendment demands that a warrant be 'issue[d].' Issuance serves to demonstrate that a neutral and detached magistrate has reviewed the warrant application and affidavit and made an independent and objective determination that probable cause exists to justify the search." United States v. Evans, 469 F. Supp. 2d 893, 897 (D. Mont. 2007) (internal citations omitted). "Issuing a warrant is not synonymous with signing a warrant." United States v. Hondras, 296 F.3d 601, 602 (7th Cir. 2002). Indeed, where a warrant is unsigned, it is still validly "issued" as long as there exists "some indication that the search is officially authorized." Evans, 469 F. Supp. 2d at 897; see also United States v. Jackson, 617 F. Supp. 2d 316, 320 (M.D. Pa. 2008) ("[S]igning a search warrant is just one of a number of methods that an issuing authority may use to signal that the warrant complies with the Fourth Amendment's probable cause requirement."); Fed. R. Crim. P. 41(d) (requiring magistrate's signature only for telephonic warrants).

> Other United States District Courts have suggested that the following can constitute indicia of issuance: (1) an indication on the warrant of the date before which the search must be conducted, (2) the presence of a case number indicating that the warrant has been filed, (3) the presence of the issuing authority's initials or other imprimaturs of judicial authority on the warrant, and (4) an in-person acknowledgment by the issuing authority to the affiant that probable cause has been found.

Jackson, 617 F. Supp. 2d at 321. The Second Circuit has viewed signatures on warrants as "purely ministerial" and not required

5

by the Fourth Amendment.  Turner, 558 F.2d at 50 (holding that magistrate's delegating task of signing warrant to subordinate did not violate Fourth Amendment, and "[a]s long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the amendment is satisfied").

Here, the primary indicator of the state court judge's intent to issue the warrant is the fact that he signed the warrant application and affidavit, as well as his post-hoc explanation in the re-execution order that the failure to sign the warrant was an administrative oversight.  The Evans court found a warrant invalid under similar circumstances, as the warrant lacked a signature, a time limitation, or any other indicator of court approval.  See 469 F. Supp. 2d at 897-98.  Other lower courts, however, have declined to invalidate search warrants based on technical deficiencies, or have found that the good faith exception applies.  See, e.g., Jackson, 617 F. Supp. 2d at 321-22; United States v. Kelley, 140 F.3d 596, 604 (5th Cir. 1998) (admitting evidence obtained pursuant to unsigned, undated warrant "[b]ecause suppression in this situation would not serve a deterrent purpose, and because probable cause existed and the application for the warrant was signed") (citing Massachusetts v. Sheppard, 468 U.S. 981 (1984), United States v. Leon, 468 U.S. 897 (1984)); see also Sheppard, 468 U.S. at 990-91 ("Suppressing evidence because the judge failed to make all the

necessary clerical corrections . . . will not serve the deterrent function that the exclusionary rule was designed to achieve."). Here, it is clear from the judge's next-day correction that the omission of a signature was a "clerical" error and that he had, in fact, performed his obligations under the Fourth Amendment.

Lyons' next contention is that the police commenced the search at 192 Hale prior to receiving the warrant, and that this invalidates the search. This issue has been addressed by the First Circuit as follows:

> Finally, appellants contend that the evidence seized should have been suppressed because the search warrant was not in the agents' physical possession at the time of entry. We disagree. "[T]he Federal Rules of Criminal Procedure [do not] impose an inflexible requirement of prior notice. Rule 41(d) does require federal officers to serve upon the person searched a copy of the warrant and a receipt describing the material obtained, but it does not invariably require that this be done before the search takes place."

United States v. Bonner, 808 F.2d 864, 869 (1st Cir. 1986) (quoting Katz v. United States, 389 U.S. 347, 356 n.16 (1967)). Therefore, the fact that the police did not physically possess the warrant at the time of entry is of no moment.

Lyons argues that the police violated federal law when they forced entry into his home by breaking a window, without presentment or announcement of a valid warrant to Lyons. Federal law allows an officer to "break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority

7

and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109. The government points out that Lyons was not at the residence when the police arrived, so the statutory requirement to announce their presence does not apply. See <u>United States v. Hawkins</u>, 243 F. Supp. 429, 432 (D.C. Tenn. 1965) ("In this case it would have been an empty gesture for the officers to have announced to an empty house that they were officers and that they were present for the purpose of executing a search warrant. In the opinion of the Court this statute is not applicable to the situation in the present case."); <u>United States v. Watson</u>, 307 F. Supp. 173, 176 n.2 (D.C.D.C. 1969) ("It appears to be fairly well settled that statutes requiring notice of purpose and authority and refusal of admittance prior to forced entry presuppose the presence of someone on the premises and do not apply when the premises are not occupied.").

Finally, Lyons states that he was never served with the re-executed warrant. However, Lyons has cited no case law to the effect that failure to serve a re-executed warrant, which had corrected a clerical error, would constitute a Fourth Amendment violation.

**B. Probable Cause**

A search warrant affidavit is sufficient when the "totality of the circumstances" stated in the affidavit demonstrates

probable cause to search.  See United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The warrant application must demonstrate probable cause to believe that a particular person has committed the crime - the "commission element" - and that enumerated evidence relevant to the probable criminality is likely located at the place to be searched - the "nexus element."  United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999); United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996).  To establish probable cause, the facts presented in the affidavit need only warrant a person of reasonable caution to believe that the evidence of a crime will be found.  Feliz, 182 F.3d at 86 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)).  "The probable cause standard does not demand any showing that such belief be correct or more likely true than false."  Id. (internal quotation omitted).

Here, Trooper Russolillo's affidavit describes the results of the police investigation and electronic wiretap surveillance demonstrating Lyons' involvement in an illegal sports gambling operation.  Specifically, there were a number of intercepted phone calls between Lyons and other individuals known to be involved in the sports betting world.  Russolillo Aff. ¶¶ 171-72 (Def. Ex. 1) ("Aff.").  In one such call, Richard Settipane, a known bookmaker, discussed avoiding someone named "Todd" because he owed Todd money.  Aff. ¶ 173.  Another phone call between

9

Settipane and Eremian ties Settipane to S.O.S.; "Todd" was once again named in this conversation, as well as in another phone call between Settipane and a different S.O.S. representative. Aff. ¶ 174-75. Lyons also communicated with other S.O.S. agents or bettors. See, e.g., Aff. ¶¶ 176-79. The police observed a meeting between Lyons and Settipane, after which Lyons returned to his residence at 192 Hale. Aff. ¶ 175. Lyons had similar meetings with other bettors and agents. Aff. ¶¶ 178-79. Lyons left 192 Hale to attend these meetings, and returned there after each one. Aff. ¶ 172. Based on his training and experience, and the intercepted conversations, Russolillo concluded that "Todd Lyons uses his residence as a place where he stores gaming records and money." Id.

The intercepted phone conversations and observed meetings are enough to "warrant a [person] of reasonable caution in the belief" that Lyons was involved with S.O.S. and its illegal gambling operations. Brown, 460 U.S. at 742. It thereby satisfies the commission element of the probable cause inquiry. See Feliz, 182 F.3d at 86. Further, the fact that Lyons was in his house prior to each meeting, drove to each meeting in the Audi, and returned to his house after each meeting creates probable cause to believe that evidence of his illegal gambling activities would be found both in the Audi and at 192 Hale. The warrant thus satisfies the nexus element as well. Id.

Lyons argues that the affidavit supporting the January 4,

2006 search warrants improperly incorporated affidavits supporting the December, 2005 wiretap warrants, because the state court judge may not have had access to the earlier affidavits when reviewing the 2006 warrant application. Because the Court finds that the January 4, 2006 affidavit is sufficient on its own to create probable cause without the information contained in the 2005 affidavits, the Court need not address this argument.

**C. Franks Hearing**

Lyons seeks an evidentiary hearing on his allegations of falsehood in the affidavit supporting the request for a search warrant. To obtain a "Franks" hearing, defendant must make a preliminary showing that a statement in the affidavit was "knowingly and intentionally false, or made with reckless disregard for the truth," and that the statement is material to finding of probable cause to support the issuance of the warrant underlying the search. Charles, 213 F.3d at 24 (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)); United States v. Vargas, 931 F.2d 112, 114 (1st Cir. 1991).

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

Franks, 438 U.S. at 171.

Lyons alleges that two statements in the Russolillo

11

affidavit constitute reckless disregard for truth. The first is Russolillo's assumption that the "Billy" referred to in one phone call is William Means (brother of Chris Means, another agent/bettor). Def. Br. at 24. This assumption, far from being reckless, is reasonable and supported by the fact that "Billy" and Chris Means were together during one phone call. See Aff. ¶ 179. Lyons also states that, in Russolillo's description of a meeting with one Scott Clayman, Russolillo "recklessly concludes that it was to collect money for Eremian or SOS." Def. Br. at 24. Russolillo's conclusion was purportedly based on surveillance of the meeting and the telephone call arranging it, as well as "facts . . . gathered throughout this investigation." Aff. ¶ 178. Lyons has made no "offer of proof" to demonstrate such recklessness. Franks, 438 U.S. at 171.

Similarly, Lyons alleges that the statement in the affidavit that Lyons would go to meetings from his home and return there afterwards is false. However, the affidavit offers proof in the form of police surveillance, and Lyons makes no offer of proof to the contrary. He also states that the affidavit is false in its summary of the telephone calls between Settipane, his associate Swartz, and "a representative of SOS" on November 17 and 19, 2005. See Aff. ¶¶ 173-74. Lyons notes that the telephone calls do not mention Lyons' last name, and that there is no mention of S.O.S. Without a more specific allegation of falsehood, and an offer of proof to the contrary, however, Lyons has not made the

requisite showing for a Franks hearing.

Finally, Lyons states that several statements in the affidavit are unsupported by evidence.  The standard for a Franks hearing is high, however; a defendant must allege deliberate falsehood or reckless disregard for truth, not just that the affidavit is unsupported by evidence.

**D. The 2010 Laptop Seizure**

Lyons argues that the police violated his rights by seizing his laptop during the 2010 arrest, and subsequently searching the laptop pursuant to a warrant in 2010.  In his affidavit, Lyons states that when he was arrested, he was logged onto the CBS Sports website, which contains Major League Baseball team schedules and tracks live games, to investigate the following week's projected pitching match-ups.  Lyons Aff. ¶¶ 3, 5.  He says he had tickets to two Red Sox games the following week and was planning to attend one and give the tickets to the other away.  Id. ¶ 4; Def. Ex. 3. He also had the television on and was watching the live Red Sox game.  Id. ¶ 8.  He concedes that hand-written numerical notations were found next to his computer.  See Def. Ex. 13.  One such note read:

```
  101,676
-  50,000
-  51,676
+  8,468
+ 21,777
-  21,431
-  19,047
```

```
   + 97,550
   + 57,072
```

Id. The government argues that the seizure was valid, because the laptop was in plain view during the 2010 arrest, displaying a sports website, and the nearby notes suggested that the computer had been used for gambling purposes. See Payton v. New York, 445 U.S. 573, 587 (1980).

"'Plain view' seizures are lawful if (1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a lawful right of access to the object itself." United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004) (internal quotation marks and citation omitted). As to the first requirement, the arrest warrant justified the officers' presence in Lyons' home. See United States v. Towne, 705 F. Supp. 2d 125, 134 (D. Mass. 2010) ("Police executing a valid search or arrest warrant may seize evidence encountered in plain view."). The Court further finds that the police had probable cause to seize the laptop. A computer displaying a sports website, next to notes with tallies like those found in this case, would give a reasonable person probable cause to conclude that the computer had been used for sports betting purposes. Finally, because the police were lawfully present in the house, they had a lawful right of access to the object itself, in satisfaction of the third requirement. See United States v. Jones, 187 F.3d 210, 221 n.10 (1st Cir.

1999). As such, the police properly seized the laptop under the "plain view" doctrine.

**ORDER**

The Motion to Suppress Evidence Seized From 192 Hale Street, an Audi, A Laptop and Lyons' Person (Doc. 62) is **DENIED**.

<u>/s/ PATTI B. SARIS</u>
PATTI B. SARIS
United States District Judge